UNITED STATES DISTRICT COUR
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| RODDIE MCDOWALL, TERESA HATTER MCDOWALL and TRANSCENDING FUTURE LEGACY LLC,<br><br>                      Plaintiffs,<br>   v.<br><br>ILKB LLC, MICHAEL PARRELLA, ILKB TOO, LLC, DANIEL CASTELLINI, and SHAUN YORK, each as successor by merger to ILKB LLC.<br><br>                     Defendants. | Civil Action No.:  **2:20-cv-06171**<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs, Roddie McDowall, Teresa Hatter McDowall and Transcending Future Legacy LLC (each a "**Plaintiff**" and collectively, the "**Plaintiffs**"), by and through their attorneys, Law Office of Peter D. Baron, PLLC, as and for their complaint ("**Complaint**") against the above-captioned defendants (each a "**Defendant**" and collectively, the "**Defendants**") allege, upon knowledge as to themselves and their own acts, and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.       This is an action by Plaintiffs, former franchisees of ILKB LLC ("**ILKB**"), against ILKB and its principal officer, Michael Parrella, (the "**Principal Perpetrator**"),  who dominated  and  controlled ILKB  using  it as an instrumentality to defraud and otherwise damage the Plaintiffs and other similarly situated franchisees. Plaintiffs assert claims against ILKB and the Principal  Perpetrator  (collectively,  the  "**ILKB  Defendants**")  for  fraud,  negligent misrepresentation, violation of the New York State Franchise Sales Act, and breach of contract in

1

connection with Plaintiffs' purchase of a franchise for a kickboxing studio known as "iLoveKickboxing." Plaintiffs also seek a declaration that the Principal Perpetrator is liable for ILKB's obligations to the Plaintiffs pursuant to alter ego, veil piercing and agencies theories.

2.      Plaintiffs initially attempted to settle the matter with ILKB and attempted to initiate mediation proceedings pursuant to dispute resolution provisions in the franchise agreement at issue which was executed between Plaintiffs and ILKB on the basis of misrepresentations made by the ILKB Defendants. Defendants failed to cooperate with the dispute resolution provisions by becoming non-responsive to Plaintiffs and not complying with their obligations pursuant to the franchise agreement at issue. Therefore, Plaintiffs must proceed before this Court. As a result of ILKB Defendants' unlawful conduct, Plaintiffs have been injured in an amount to be proven at trial but in excess of $750,000. Absent judicial intervention, Plaintiffs do not believe ILKB Defendants will cease their fraudulent conduct or repay the funds improperly or unlawfully taken and withheld.

3.      Plaintiffs additionally seek a declaration that each of ILKB TOO, LLC, Daniel Castellini and Shaun York (collectively, the "**ILKB TOO Defendants**") are liable for ILKB's obligations to the Plaintiffs pursuant to successor liability based on their recent representations of a de facto merger. Subject to their ongoing investigation and discovery into this matter, Plaintiffs reserve the right to amend the complaint.

## THE PARTIES

*A.* Plaintiffs

4.      Plaintiffs Roddie McDowall and Teresa Hatter McDowall (collectively, the "**McDowalls**") are each individuals who, at all relevant times, reside in and are citizens of Texas and are former franchisees of an "iLoveKickboxing.com" studio located at 1201 W. Arbrook Blvd, Ste. 115, Arlington, Texas.

5.      Plaintiff Transcending Future Legacy LLC ("TFL LLC") is at all times relevant a Texas  limited liability company with its principal place of business located at 2290 Langdon Drive, Frisco, Texas 75033. The McDowalls are the sole managing members and owners of TFL LLC.  TFL LLC became effective on January 1, 2016 and is at all times relevant the operating company for the franchisee of "iLoveKickboxing.com" franchises, which are fitness facilities dedicated to kickboxing, a form of physical fitness.

*B.* Defendants

6.      Upon information and belief, Defendant ILKB LLC is at all times relevant a New York limited liability company with an office located at 1844 Lansdowne Avenue, Merrick, New York and has its principal place of business within this district. At all times prior to the merger alleged herein, Michael Parrella was ILKB's sole member as well as an officer, director, executive and/or manager of ILKB. On information and belief, following the merger alleged herein, Michael Parrella, Daniel Castellini, and Shaun York, directly or indirectly through ILKB TOO, LLC, (i) are each member of ILKB, (ii) each retained economic interest in and control over ILKB, and (iii) each are officers, directors, executives and/or otherwise play a role in management of the ILKB business. ILKB is at all times relevant the franchisor of "iLoveKickboxing" franchises, which are fitness facilities dedicated to kickboxing, a form of physical fitness.

7.      Upon information and belief, Defendant, Michael Parrella ("**Parrella**") is a citizen and resident of New York residing in this district.

8.      Upon information and belief, Defendant, ILKB TOO, LLC ("**ILKB TOO**") is a Florida limited liability company with a principal place of business in Florida and an office located at 210 Lake Harris Drive, Lakeland, Florida. Upon information and belief, Defendant ILKB TOO is a successor by merger to Defendant ILKB LLC. On information and belief, following the merger alleged herein, ILKB TOO's members include Michael Parrella, Daniel Castellini, and/or Shaun York. On information and belief, the merger alleged herein occurred in New York and is governed by New York law. ILKB TOO is authorized to, has and continues to transact business within the State of New York by acquiring or merging with ILKB, LLC in New York and by continuing ILKB, LLC's business in New York.

9.      Upon information and belief, Defendant Daniel Castellini ("**Castellini**") is a citizen of California residing at 3431 Via Montebello #192-213, Carlsbad, California. Upon information and belief, Defendant Castellini, directly or indirectly through ILKB TOO, is a successor by merger to Defendant ILKB LLC and he is authorized to, has and continues to transact business within the State of New York by acquiring or merging with ILKB, LLC in New York and by continuing ILKB, LLC's business in New York. On information and belief, the merger alleged herein occurred in New York and is governed by New York law.

4

10.   Upon information and belief, Defendant Shaun York ("**York**") is a citizen of Florida residing at 210 Lake Harris Drive, Lakeland, Florida. Upon information and belief, Defendant York, directly or indirectly through ILKB TOO, is a successor by merger to Defendant ILKB LLC and he is authorized to, has and continues to transact business within the State of New York by acquiring or merging with ILKB, LLC in New York and by continuing ILKB, LLC's business in New York. On information and belief, the merger alleged herein occurred in New York and is governed by New York law.

## JURISDICTION AND VENUE

11.   This Court has jurisdiction over this action under 28 U.S.C. § 1332, as Plaintiffs and Defendants are citizens of different states, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

12.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant ILKB and Defendant Parrella are residents and citizens of this district with their principal place of business within this district; Defendants ILKB TOO, Castellini, and York are successors by merger to Defendant ILKB; and Defendants have sufficient contacts to subject them to personal jurisdiction in this Court.

## FACTS COMMON TO ALL COUNTS

13.   Plaintiffs became interested in purchasing a franchise and were introduced to the ILKB Defendants by a franchise broker, Franchoice, in July of 2015.

14.   The McDowalls are computer software engineers and had never invested in a franchise at the time. Employees of ILKB Defendants, provided the McDowalls ILKB's Franchise Disclosure Document (or "**FDD**") dated March 26, 2015 to induce them to purchase ILKB franchises.

15.     On information and belief, the FDD had not been registered with the State of New York, as required. The FDD is a prospectus required by law to be provided to prospective franchisees prior to the purchase to provide prospective franchisees with certain information to assist in making an informed decision whether to purchase the franchise.

16.     The FDD contained, what the Plaintiffs later discovered, to be the following false statements and material omissions:

a. The FDD omitted the fact that ILKB franchise owner and founder, Parrella, had filed for bankruptcy and had been discharged in 2008, as required to be disclosed under New York and federal law.

b. The FDD omitted lawsuits in which Parrella or FC Online Marketing, LLC, the predecessor affiliate of ILKB, had been charged with fraud, violation of franchise laws or theft of services.

c. The FDD falsely stated that ILKB did not receive rebates from suppliers to franchisees, when, in fact, it did.

d. The FDD omitted the fact that ten ILKB franchised units had closed in 2015 and five had closed in 2014.

17.     After reviewing ILKB's fraudulent FDD provided to them by ILKB's employees, attending ILKB Discovery seminars on September 9 and 10, 2015 and speaking with ILKB's owner, officers and employees, Plaintiffs decided to purchase an ILKB franchise with three territories and executed an ILKB Franchise Agreement on September 21, 2015 (the "Franchise Agreement") with the intention of setting up franchised businesses in the vicinity of Dallas, Texas. ILKB employees fraudulently enticed Plaintiffs to acquire three territories instead of one territory by offering a $40,000 discount to the $150,000 normal price for purchasing three

franchise territories.

18.     Sometime in January 2016, Plaintiffs in earnest became involved with the process of setting up an ILKB franchise. After entering into the Franchise Agreement, Plaintiffs had received multiple presentations made to them by ILKB's owner, officers and employees covering various aspects of the franchising process from Ryan Sgoria (ILKB's Franchise Liaison), Vincent Iuffredo (Director of Franchise Operations for ILKB), Kelly Murray (Director of Franchise Training for ILKB) and Nicole Semidei (Compliance Officer of ILKB). Plaintiff Roddie McDowall attended franchise training from April 27 to May 1, 2016 and Plaintiff Teresa Hatter McDowall attended franchise training from May 18 to May 22, 2016, where they attended presentations by Defendant Parella, Scott Ferrari (President and Director of Franchise Development at ILKB) and Ryan Healy (Operations Vice President at ILKB) and received ILKB's Franchise Operations Manual.

19.     Plaintiffs complied with each of the pre-opening actions prescribed in ILKB's presentations and Franchise Operations Manual to set up their franchised business. Their operating company, TFL LLC, entered into all the appropriate agreements, received all applicable permits and certificates, built out their leased space pursuant to specifications, hired staff following the ILKB recommendations and established their franchise business in Arlington, Texas located at 1201 W. Arbrook Blvd, Ste. 115.  Plaintiffs paid $110,000 toward franchise fees for three separate locations and other start-up costs related to the Arlington location totaling $285,000 from their savings and retirement accounts and a $150,000 SBA loan. The business was opened on October 12, 2016 doing business as ilovekickboxing.com.

20.   As suggested by ILKB through its literature, Plaintiffs marketed their business using Facebook, Instagram, Flyers, Revlocal, High School Athletic Ads, Business-to-Business contacts, Athletic Forums and Expos. They also staffed and trained their staff following ILKB model recommendations. Plaintiffs managed the business on-site and hired 24 total employees, all instructors, over the life of the business. At its peak, the franchise had 343 members, with only about 160 paying membership fees. After operating with losses each month for 22 consecutive months totaling $250,000 in net losses, Plaintiffs' business became insolvent and they were forced to close their ILKB franchise.

21.   Before closing their franchise business, Plaintiffs reached out to ILKB multiple times for guidance and support with very limited cooperation and no success in reversing their franchise losses. Finally, On February 7, 2018, Plaintiffs spoke to Scott Ferrari about selling their franchise and despite at first indicating that he would help them find potential buyers, he became non-responsive to Plaintiffs' queries.   On July 26, 2018, Plaintiffs corresponded with Ryan Healy again about selling their franchise, but received no assistance and was informed by Mr. Healy and Aaron Geary (Senior Franchise Development Specialist at ILKB) that there are no leads for franchise owners in the Dallas, Texas available.

22.   On August 31, 2018, Plaintiffs formerly closed their ILKB store front and ceased conducting their business operations. They never were able to pursue the development of the two other franchise territories they paid ILKB franchise fees to develop.

23.   Defendant ILKB's FDD, sales literature, presentations and Operations Manual are filled with material misrepresentations, inaccurate data and false information presenting a flawed business model that fictitiously claims it is applicable to different economies and demographics in order to deceitfully entice franchisees such as Plaintiffs.

24.     Defendant ILKB's <u>marketing and operational materials</u> deceptively misled Plaintiffs by drastically and knowingly understating the buildup, investment and operating costs related to their ILKB franchise, as well as, offering other inaccurate, misrepresented and misstated statistics and data, including but not limited to, the following:

a.  the initial investment for a single franchise is "$160-$190K" (See the ILKB presentation provided to Plaintiffs attached hereto as **Exhibit A**), <u>instead</u> Plaintiffs in fact spent over $285,000 to start up their franchise business, more than $100,000 more than what ILKB represented;

b.  the monthly overhead to operate a franchise is $24,850 and that 200 members would result in "$27,000 (Over Break Even)" with an expectation of achieving this membership level in "4-6 months" (See the ILKB presentation provided to Plaintiffs attached hereto as **Exhibit A**), <u>instead</u> after 22 months of operation, Plaintiffs had losses every month totaling approximately $250,000 in net losses while averaging $32,650 monthly expenses, $7,800 a month more than ILKB's misrepresented overhead to operate a franchise, and Plaintiffs never even got close to 200 paying members at any time;

c.  officers and employees of ILKB Defendants pledged that they would provide marketing support in many different ways (See the ILKB presentation provided to Plaintiffs attached hereto as **Exhibit A**) representing that 90% of marketing was and would be accomplished by ILKB corporate, an average of 100 trial members per month would be achieved and that 55-68% of potential ILKB studio customers introduced through ILKB's marketing would sign up for long term membership contracts averaging 14 months, <u>instead</u> ILKB Defendants' deceitful marketing efforts resulted in a significantly lower trial to member conversion rate than represented of only 25.5% while generating only 652 active

paying members with an average retention of only 3-4 months during the 22 months of Plaintiffs' franchise operation.

25.  ILKB Defendants fraudulently omitted and failed to disclose certain material activities regarding the operation of the ILKB franchise to Plaintiffs including, but not limited to, the following:

a.  When a potential member purchases a trial, fighting gloves are free to the member, so franchisees are not selling them to the member; but are selling the trial with a pair of free gloves, with 100% of the revenue from the trial going to ILKB. Franchisees are required to purchase the gloves through ILKB's designated vendor, Century Martial Arts, for each trial and if the trial does not convert to membership, the franchisee took the loss on the cost of the gloves which was a material factor leading to the insolvency of Plaintiffs' ILKB franchise because of the low trial conversion rates.

b.  Misrepresentations were also made by ILKB that the kickboxing membership was created for individuals with a median income of $50,000. Through Plaintiffs' experience as an ILKB franchisee, this was a blatant misrepresentation, since the prescribed membership prices proved to be unaffordable to most people at this income level in the territories purchased by Plaintiffs.

c. ILKB Defendants misrepresented and failed to disclose the fact that ILKB would profit at Plaintiffs' expense by retaining fees from ILKB's lead generation program, which violated Plaintiffs' Franchise Agreement with ILKB. ILKB required Plaintiffs and other franchisees to participate in its lead generation program which ILKB represented to have set up with third-party promotional companies and represented that ILKB would only retain one-time upfront fees from such third-party promotional companies. However, on

information and belief, in practice, ILKB retained 100% of third-party fees and 100% of web trial purchases made through its lead generation program. The web trial process and website is not a third-party promotional company since it is owned and/or controlled by ILKB Defendants.

26. ILKB Defendants misrepresented that it would provide <u>assistance and training</u> to Plaintiffs to help them profitably operate their ILKB franchise, but failed to do so as follows:

a. When Plaintiffs realized that that they were significantly operating at a loss each month and forced to draw upon their personal funds to operate their ILKB franchise, Plaintiffs attempted numerous times to reach out to ILKB's support staff for onsite visits to adequately assess the operations and determine the reason their ILKB franchise was not profitable. Ryan Healy recommended that Plaintiffs connect with Fredrick Mertens (Director of Franchise Development and Sales Training), who worked with struggling franchises to help turn them around. After an initial call with Mertens, he never followed up after Plaintiffs made multiple attempts to contact him. No one from ILKB ever visited Plaintiffs' facility, prior to or during operations, in conflict with ILKB presentations, specifically that it would "send a team to train" Plaintiffs (See the ILKB presentation provided to Plaintiffs attached hereto as **Exhibit A**) and at Discovery Day, where ILKB stated that if the franchise is having problems, ILKB would send a representative to assess and correct any operational issues or deficiencies that were discovered.

b. Plaintiffs received no guidance from ILKB with regard to membership pricing and member retention, as well as, adequate sales support as promised in ILKB's presentation materials and training. The primary method for communication in the ILKB model is a Facebook owner's group. It is necessary to have alerts, or actively monitor this

Facebook group in order to receive pertinent information for sales leads.  However, when attempting to schedule a call with one of ILKB's designated coaches, they were often rescheduled due to no-shows by the coaches. Retail merchandise received from ILKB needed to support Plaintiffs' franchise was often sold out or significantly delayed severely impacting Plaintiffs' revenue generation contributing to their business failure.

27.   As a result of ILKB Defendants' failure to provide the above conditions that were falsely represented and promised, Plaintiffs' ILKB studio struggled to remain viable with net losses sustained every month of operation ranging from $7,000 to $21,000 per month totaling approximately $250,000 in net losses from inception of the business resulting in insolvency and the closing of the franchise.

28.   Plaintiffs paid approximately $750,000 related to their ILKB franchise business venture which included payment of Benetrends broker fees, ILKB franchise fees, startup costs and operating expenses. These payments came from Plaintiffs' savings and retirement accounts,  monies received from a $150,000 SBA loan and covering business losses.

29.   Prior to this business venture, the McDowalls had very little debt and were in a good financial position with credit scores in the upper 700s.  Since that time, their credit scores have plummeted to the lower 500s and their debt has grown in excess of $300,000.

30.   Due to ILKB Defendants' breach, fraud and misleading statements, Plaintiffs have damages and liabilities in excess of $750,000.

31.   Plaintiffs' claims were initially commenced with receipt of a demand letter from Plaintiffs' counsel by ILKB Defendants' general counsel dated January 25, 2019, attached hereto as **Exhibit B**. Active settlement discussions were conducted ensued over the next six months evidenced by the letter from Plaintiffs' counsel to ILKB Defendants' general counsel dated

July 6, 2019, attached hereto as **Exhibit C**, which had no response from ILKB Defendants. On or about February 10, 2020,  Plaintiffs' attempted to proceed with a mediation proceeding pursuant to the Franchise Agreement's dispute resolution provisions evidenced by the letter from Plaintiffs' counsel to ILKB Defendants' general counsel, attached hereto as **Exhibit D**, with no response. On or about June 4, 2020, Plaintiffs' counsel sent a letter to Defendant Parrella, attached hereto as **Exhibit E**, again without any response or cooperation from ILKB Defendants. leaving Plaintiffs no choice but to proceed before this Court.

32.   Absent judicial intervention, Plaintiffs do not believe ILKB Defendants will cease their fraudulent conduct or repay the funds improperly or unlawfully taken and withheld.

33.   Plaintiffs recently became aware that, upon information and belief, ILKB TOO Defendants became successors to ILKB by merger or de facto merger. On information and belief, each of Castellini and York, directly or through ILKB TOO, is a successor by merger to Defendant, ILKB and is liable for ILKB's obligations to the Plaintiffs.

34.   Upon information and belief, a merger or de facto merger took place whereby ILKB TOO Defendants effectively took over ILKB and such merger or de facto merger involves (i) continuity of ownership in that existing ILKB member or equity owner, Parrella, directly or indirectly, retained an interest in ILKB, its business and/or its assets following the merger; (ii) cessation or dissolution of the acquired ILKB entity soon following the merger; (iii) assumption by successor ILKB TOO Defendants of liabilities ordinarily necessary for the uninterrupted continuation of the acquired ILKB business; and (iv) continuity of certain management, personnel, assets and general business operations. The merger or de facto merger took place when Defendants had knowledge that arbitrations and other legal actions by Plaintiffs and other similarly situated franchisees were pending against ILKB.

35.   Upon information and belief, (i) ILKB TOO Defendants expressly or impliedly assumed the ILKB predecessor's tort liability, including liabilities to the Plaintiffs, in connection with the merger or de facto merger; (ii) the merger or de facto merger resulted in a consolidation of ILKB TOO Defendants with ILKB; (iii) following the merger or de facto merger, the surviving business is a mere continuation of the ILKB predecessor; or (iv) the merger or de facto merger was entered into fraudulently or wrongfully to avoid ILKB's liabilities to the Plaintiffs and other similarly situated franchisees.

## COUNT I
## Violation of the New York State Franchise Sales Act Against ILKB Defendants

36.   Plaintiffs repeat and reallege all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

37.   The Plaintiffs franchisee is a "Franchisee" and the franchisor is a "Franchisor" as defined under the New York State Franchise Sales Act, N.Y. Gen. Bus. L. § 680 et seq. The New York Act applies to the sale of the franchise to the franchisee.

38.   Under the New York Act, it is unlawful for any person, in connection with the offer, sale or purchase of a franchise to directly or indirectly employ any devise, scheme or artifice to defraud; to make untrue statements of a material fact or to admit material facts; or to engage in any practice or course of conduct that operates or would operate as a fraud or deceit upon any person. N.Y. Gen. Bus. L. § 687.

39.   Each of the ILKB Defendants violated the New York Act by, among other things:

    a.   Providing a FDD that failed to disclosure ILKB Defendants' bankruptcy and lawsuits for fraud, violation of franchise laws or theft of services;

b. Making false financial performance representations outside of the FDD; and

c. Making false statements and omissions of material facts and otherwise engaging in conduct that operates as a fraud, all as set forth above.

40.   Under Gen. Bus. L. § 691.1 the Plaintiffs are entitled to recover damages and/or rescission as well as attorneys' fees and costs.

41.   The Plaintiffs are entitled to damages incurred as a result of ILKB Defendants' misrepresentations and violations of the act.

## COUNT II
### Breach of Contract Against ILKB

42.   Plaintiffs repeat and reallege all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

43.   Plaintiff and ILKB entered into a Franchise Agreement pursuant to which, among other things, ILKB undertook certain marketing obligations, as set forth above.

44.   ILKB breached its obligations as a result of which Plaintiff has been injured in an amount to be determined at trial but in excess of $750,000.

## COUNT III
### Common Law Fraud Against ILKB Defendants

45.   Plaintiffs repeat and reallege all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

46.   ILKB Defendants made the representations and fraudulent omissions set forth above knowing that they were false and with the intent that Plaintiffs would rely upon them to their detriment. The Plaintiffs justifiably relied upon ILKB Defendants' misrepresentations and incurred damages as a result. The Plaintiffs are entitled to recover the losses that it has suffered as a result of ILKB Defendants' fraud.

## COUNT IV
### Negligent Misrepresentation Against ILKB Defendants

47.  Plaintiffs repeat and reallege all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

48.  ILKB Defendants negligently made false representations in the course of the sale of the franchise and that they knew to be contrary to the truth and knowing that the Plaintiffs would rely upon them.

49.  As a result of Plaintiffs' reliance upon ILKB Defendants' negligent misrepresentations, the Plaintiffs have incurred damages to which they are entitled to recover.

## COUNT V
### Alter Ego, Veil Piercing and Agency Liability Against ILKB and Parrella

50.  Plaintiffs repeat and reallege all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

51.  At all relevant times, Principal Perpetrators owned and/or controlled ILKB. At all relevant times, Principal Perpetrators dominated and controlled ILKB using it to perpetrate the above fraud and wrongdoing upon Plaintiffs.

52.  At all relevant times, Principal Perpetrators dominated and controlled the assets, operations, and activities of ILKB using it to perpetrate the above fraud and wrongdoing upon Plaintiffs.

53.  Principal Perpetrators failed to observe important corporate formalities and used the assets and operations of ILKB for their own purpose and benefit to perpetrate the above fraud and wrongdoing upon Plaintiffs.

54.  Principal Perpetrators, acting in concert and in their capacities as officers and agents of ILKB, used ILKB's email accounts, offices and other ILKB resources to conduct business on their own behalf and/or for their own benefit.

55.  Principal Perpetrators dominated and controlled ILKB to such an extent that any adherence to the fiction of ILKB's separate existence would permit the abuse of a limited liability company and cause and promote injustice by allowing Principal Perpetrators to evade liability or veil assets that should in equity be used to satisfy the judgment sought by the Plaintiffs in this litigation.

56.  At all relevant times, Principal Perpetrators were and are alter egos of ILKB because there was and is such unity of interest, ownership and control that each Principal Perpetrators must be treated as one with ILKB to prevent the inequitable result of permitting them to profit from the above fraud and wrongdoing perpetrated upon Plaintiffs.

57.  Additionally or alternatively, any corporate veil between ILKB, on the one hand, and any of the Principal Perpetrators, on the other hand, must be pierced to hold the Principal Perpetrators vicariously liable for obligations of ILKB owed to Plaintiffs based on veil piercing or agency theories. Doing so is necessary and proper to prevent the wrongs and injustices perpetrated by the ILKB Defendants because the Principal Perpetrators exercised domination and control over ILKB using it as an instrumentality to perpetrate the above fraud and wrongdoing upon Plaintiffs. As a result of the foregoing, Plaintiffs are entitled to a declaration that the Principal Perpetrators are each are liable for ILKB's obligations to the Plaintiffs based on alter ego, veil piercing or agency liability.

## COUNT VI
### Successor Liability Against ILKB TOO, Castellini and York

58.  Plaintiffs repeat and reallege all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

59.  A merger or de facto merger took place whereby ILKB TOO Defendants effectively took over ILKB and such merger or de facto merger involves (i) continuity of ownership in that existing ILKB member or equity owner, Parrella, directly or indirectly, retained an interest in ILKB, its business and/or its assets following the merger; (ii) cessation or dissolution of the acquired ILKB entity soon following the merger; (iii) assumption by successor ILKB TOO Defendants of liabilities ordinarily necessary for the uninterrupted continuation of the acquired ILKB business; and (iv) continuity of certain management, personnel, assets and general business operations.

60.  On information and belief, (i) ILKB TOO Defendants expressly or impliedly assumed the ILKB predecessor's tort liability, including liabilities to the Plaintiffs, in connection with the merger or de facto merger; (ii) the merger or de facto merger resulted in a consolidation of ILKB TOO Defendants with ILKB; (iii) following the merger or de facto merger, the surviving business is a mere continuation of the ILKB predecessor; or (iv) the merger or de facto merger was entered into fraudulently or wrongfully to avoid ILKB's liabilities to the Plaintiffs and other similarly situated franchisees.

61.  ILKB TOO Defendants effectively took over ILKB and its business and should be deemed to carry the predecessor's liabilities as a concomitant to the benefits ILKB TOO Defendants derive from the goodwill purchased.

62.  Each of ILKB TOO Defendants, directly or through ILKB TOO, is a successor by merger to Defendant, ILKB and is liable for ILKB's obligations to the Plaintiffs.

63.  As a result of the foregoing, Plaintiffs are entitled to a declaration that ILKB TOO Defendants are each liable for ILKB's obligations to the Plaintiffs based on successor liability.

**WHEREFORE,** Plaintiffs pray for judgment against Defendants as follows:

A.  For entry of Judgment in Plaintiffs' favor on all Counts;

B.  For an Award against Defendants for all damages to which Plaintiffs may be entitled, including incidental damages, compensatory damages, and consequential damages;

C.  For an Award of punitive damages;

D.  For costs and attorneys' fees to the extent provided by law;

E.  For prejudgment and post-judgment interest according to law; and,

F.  For such other and further relief as the Court may deem proper and just.

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand trial by jury of all issues so triable.

Dated:  Melville, New York
        December 20, 2020

LAW OFFICE OF PETER D. BARON, PLLC
Attorneys for Plaintiffs

*/s/Peter D. Baron*
Peter D. Baron (PB8519)
532 Broadhollow Road, Suite 114
Melville, New York 11747
631-367-7000